**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| ROBERT GRIMSLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:21-cv-4008-DCN |
| vs. ) | |
| ) | **ORDER** |
| CBS BROADCASTING INC., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The following matter is before the court on defendant CBS Broadcasting Inc.'s ("CBS") motion to dismiss, ECF No. 5. For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

This defamation action arises out of an allegedly defamatory photograph that was published in conjunction with a news article. Plaintiff Robert Grimsley ("Grimsley") is a retired police officer. On or about May 18, 2021, CBS—through its affiliate—published and disseminated a web article titled "Jamal Southerland's mother praises firing of deputies" (the "Article"). ECF No. 1-1, Compl. ¶ 7. The Article reported on two Charleston County Sheriff's deputies who had been fired in connection with the death of a mentally ill detainee. Below the headline, the Article "[p]rominently featured" an old photograph of Grimsley from when he was previously employed in the Charleston County Sheriff's office. Id. In the photograph, Grimsley—in uniform—can be seen sitting on a motorcycle, and on the front wheel fender of the motorcycle, the name "Sgt. Rob Grimsley" can be seen written in cursive. The photograph of Grimsley was not taken in relation to the events in the Article; rather, it was a "dated photograph" from an

1

event at the "Palmetto Rodeo." Id. ¶ 9.  The Article proceeded to identify two deputies who were purportedly involved in the incident, neither or whom were Grimsley.  Other internet news providers picked up the story and ran it, and in doing so, kept the photograph of Grimsley.

On November 9, 2021, Grimsley filed a complaint against CBS in the Charleston County Court of Common Pleas, asserting a claim for defamation and seeking general, special, presumed, and punitive damages.  Id. ¶¶ 11–13.  On December 10, 2021, CBS removed the action to this court.  ECF No. 1.  On December 17, 2021, CBS filed a motion to dismiss for failure to state a claim.  ECF No. 5.  Grimsley responded in opposition on December 31, 2021, ECF No. 7, and Grimsley replied on January 7, 2022, ECF No. 8.  As such, the motion has been fully briefed and is now ripe for the court's review.

## II.  STANDARD

A Federal Rule of Civil Procedure 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").  To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief.  Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.

2

1993).  When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff.  Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir.1999); Mylan Labs., Inc., 7 F.3d at 1134.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

### III.  DISCUSSION

CBS requests that the court dismiss Grimsley's complaint in its entirety for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).  As a preliminary matter, CBS asks the court to consider the contents of the Article itself, which CBS attaches to its response.  In considering a Rule 12(b)(6) motion, courts may consider "documents incorporated into the complaint by reference . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic."  United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014) (first quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); and then quoting Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)).  While Grimsley did not attach the Article to his complaint, Grimsley attaches a screenshot of the photograph to his response to the motion to dismiss, ECF No. 7-1.  The photograph is incorporated into the complaint, and by reproducing it, Grimsley clearly agrees the photograph is integral.  As such, the court will

3

consider the photograph of Grimsley in the Article. However, the court finds it unnecessary to take judicial notice of the remainder of the Article. Of relevance here, Grimsley admits that the story concerned two other Charleston County Sheriff's deputies and, in alleging that the substance of the article might be perceived as unfavorable, otherwise describes the story with adequate specificity. CBS argues that judicial notice is necessary because the complaint incorrectly states that, according to the article, the two deputies were "arrested," ECF No. 5-1 at 2 n.1, but this fact is immaterial to the court's analysis and does not necessitate consideration of the Article.

CBS asks the court to dismiss Grimsley's complaint because it fails to allege any defamatory statements "of and concerning" Grimsley. To bring a successful claim for defamation, a plaintiff must prove: "(1) a false and defamatory statement was made; (2) the unprivileged publication of the statement was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement regardless of special harm or the publication of the statement caused special harm." Kunst v. Loree, 817 S.E.2d 295, 302 (S.C. Ct. App. 2018), reh'g denied (Aug. 16, 2018). Under the first element, "the plaintiff must establish that the defendant's statement referred to some ascertainable person and that the plaintiff was the person to whom the statement referred." See Garrard v. Charleston Cnty. Sch. Dist., 838 S.E.2d 698, 717 (S.C. Ct. App. 2019) (quoting Burns v. Gardner, 493 S.E.2d 356, 359 (S.C. Ct. App. 1997)); see also Outlaw v. Standard Prods. Co., 122 F.3d 1062 (4th Cir. 1997) (unpublished table opinion) (observing that in a defamation case, South Carolina law "require[s], among other things, . . . that the defamation be about the plaintiff"); 50 Am. Jur. 2d Libel & Slander § 30 (2022) ("To sustain an action for libel, the allegedly defamatory words must refer to some ascertained

or ascertainable person, and that person must be the plaintiff."). Similarly, a cause of action for defamation is "constitutionally defective" if it is incapable of supporting a finding that the allegedly defamatory statements "were made 'of and concerning'" the plaintiff. N.Y. Times Co. v. Sullivan, 376 U.S. 254, 288 (1964). CBS's motion to dismiss does not argue that the complaint fails to adequately plead any other element, and therefore, the single issue before the court is whether the Article sufficiently identified Grimsley as one of the deputies involved in the death to satisfy the "of and concerning" requirement.

    CBS argues that a picture accompanying an article is not sufficient to satisfy the "of or concerning" requirement. However, the cases on which CBS relies on are distinguishable. First, CBS argues that a South Carolina Supreme Court case, Neeley v. Winn-Dixie Greenville, Inc., 178 S.E.2d 662 (S.C. 1971), is controlling. In Neeley, a man named David W. Neeley issued three checks to the defendant, and all three checks were returned by the bank. The defendant wrote a letter to David W. Neeley describing the wrongdoing but instead, delivered it to the address of the plaintiff, David A. Neeley. Id. at 663–64. David A. Neeley sued, arguing that his friend and wife learned of the contents of the letter, and he was defamed as a result. The court assumed, for purposes of appeal, that the letter "would have been libelous" if it was written about or concerning David A. Neeley. Id. at 665. However, the court held that the letter was not written to or published concerning the plaintiff because even if the accusation were defamatory, David A. Neeley was not named in the letter. Id. at 666. In those respects, this case presents nearly the reverse issue. The Article identified Grimsley on at least one occasion because he was shown, along with his name, in the photograph above the headline of the article.

5

The cursive name on the motorcycle was not a misidentification because the complaint alleges that Grimsley himself was photographed on the motorcycle. In its truest sense, then, CBS's argument is not that the Article failed to identify Grimsley at all; rather, it is that to the brief extent Grimsley is mentioned, it was not in a defamatory way. In other words, since the Article contains a photograph identifying Grimsley, the more appropriate issue is whether the photograph in the context of the Article—when viewed in the light most favorable to the plaintiff—constituted a defamatory statement that was "of and concerning" Grimsley. "The publication of a statement is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Fleming v. Rose, 567 S.E.2d 857, 860 (S.C. 2002). "The Court will not hunt for a forced and strained construction to put on ordinary words, but will construe them fairly, according to their natural and reasonable import, in the plain and popular sense in which the average reader naturally understands them." Timmons v. News & Press, Inc., 103 S.E.2d 277, 280–81 (S.C. 1958).

  CBS appears to respond on this point by arguing that the inclusion of Grimsley's name does not mean the Article is "of and concerning" him because the Article was merely using a "stock photograph." ECF No. 8 at 4. It may be true that CBS can exercise creative liberty in using a stock photograph to represent the Charleston County Sheriff's Office instead of a photograph of the two deputies involved. But the complication arises because the photograph positively identified Grimsley, and he has plausibly alleged that featuring his name in connection with the alleged abuse and death of a mentally ill detainee was defamatory. CBS then argues that even when read in the

light most favorable to Grimsley, no reasonable reader could have understood the Article to be alleging that Grimsley was one of the two officers involved because the two actual officers were named. To be sure, the complaint alleges that the Article "falsely portrayed the Plaintiff as one of the deputies who pepper-sprayed and tased a mentally ill detained." Compl. ¶ 10. However, the complaint further suggests that by publishing a photograph of Grimsley, CBS "associated" Grimsley with the death of the detainee. Id. The court finds it plausible that the mere association with the incident itself lowered Grimsley's estimation in the community.

CBS further claims that Neeley is controlling based on its holding that a defamatory statement cannot be "of and concerning" the plaintiff where it accuses other individuals of misconduct. CBS's argument misses the mark. The court in Neeley repeatedly emphasized the critical fact that only two viewers could have possibly been made aware of the letter, and both "knew . . . that the letter was not written to or concerning the plaintiff." Id. at 666. Those circumstances are not present here because again, the complaint plausibly alleges that readers of the Article were likely to associate Grimsley with the incident described therein.

Another case on which CBS relies, Houseman v. Publicaciones Paso del Norte, S.A. DE C.V., 242 S.W.3d 518 (Tex. Ct. App. 2007), also underscores that the more relevant issue is whether the photograph had a defamatory effect on Grimsley. In Houseman, the court analyzed the issue as a matter of whether the publication at issue was capable of a defamatory meaning. Id. at 524. Houseman presents similar underlying facts. There, a newspaper published a photograph of the plaintiff, an immigration agent, in relation to an article about a different U.S. customs agent who was accused of drug

7

trafficking. Id. at 521–22. Like CBS, the defendant argued that the publication was not "of and concerning" the plaintiff because the "hypothetical readers learned by reading the article that the narcotrafficker was [someone else, not the plaintiff]." Id. at 525. The court agreed and held that no reasonable reader would have been misled into believing the plaintiff was tied to drug trafficking. Nevertheless, Houseman is not persuasive. It is a Texas case that analyzed Texas law, it arose on a motion for summary judgment posture, and it has not been adopted by any South Carolina court. More importantly, the court in Houseman relied on the fact that the plaintiff was not specifically named in the article. Instead, the Houseman court noted that the article had only referred to the plaintiff as an "agent" or "the agent." Id. When it applied another case that reached a similar holding, it emphasized that none of the plaintiffs there had been named or otherwise identified in the publications either. See id. (citing In re Cable News Network & Time Mag. "Operation Tailwind" Litig., 2006 WL 2711744, at *4 (N.D. Cal. Sept. 21, 2006)). Critically, here, the complaint alleges that Grimsley was identified by name in the photograph, making him far more ascertainable to a reader. Moreover, the picture in Houseman was a more generic photo and less likely to be considered depicting the culpable agent. It was "a picture of Houseman working at a border check point. He is in uniform, walking with a police dog, and surrounded by vehicles." Id. at 522. Here, on the other hand, the photo is zoomed in on one officer and, in the light most favorable to Grimsley, would appear to have no relation to the article unless it was depicting one of the agents involved. Therefore, the court is not persuaded that Houseman precludes a finding that Grimsley has sufficiently alleged that the Article was "of and concerning" him.

The complaint alleges that under "the common law of South Carolina, the 'of and concerning' component can be satisfied by photograph identification." Compl. ¶ 7 (quoting Wilhoit v. WCSC, Inc., 358 S.E.2d 397 (S.C. Ct. App. 1987)). Specifically, Grimsley argues that under Wilhoit, publishing the photograph next to the article satisfies the "of or concerning" requirement because it implied that he was one of the individuals involved in the death of the detainee. CBS argues that Wilhoit is not controlling, but the court disagrees, ultimately finding that Wilhoit is on point. First, CBS argues that Wilhoit is a lower court decision that "cannot overturn" the South Carolina Supreme Court's decision in Neeley. ECF No. 5-1 at 7. The court disagrees that the court sought to overturn Neeley. Certainly, a federal court sitting in diversity is "obligat[ed] to apply the jurisprudence of . . . the South Carolina Supreme Court." Thompson v. CDL Partners LLC, 378 F. App'x 288, 291 (4th Cir. 2010). However, where the South Carolina Supreme Court has not directly or indirectly ruled on a particular issue, the court turns to the "decisions of the South Carolina Court of Appeals" as they "'constitute the next best indicia of what state law is, although such decisions may be disregarded if the federal court is convinced by other persuasive data that the highest court of the state would decide otherwise.'" Id. (quoting Liberty Mut. Ins. Co. v. Triangle Indus. Inc., 957 F.2d 1153, 1156 (4th Cir. 1992)). The court finds that Wilhoit, which was issued more than a decade after Neeley, spoke on a wholly different issue than Neeley. Specifically, the issue in Wilhoit was whether "the association of [the plaintiff's] picture with the accompanying broadcast of the news report of [another person] pleading guilty to embezzlement [meant] there was an implication that [the plaintiff] was an embezzler. 358 S.E.2d at 399. The South Carolina Supreme Court had yet to confront such an issue

9

as it related to both print and television media.  See also id. at 400 (observing that the South Carolina Supreme Court "had not directly addressed" the issue).

Second, CBS argues that Wilhoit is distinguishable because the court therein specified that publication of a person's portrait is only libelous if it is published "in connection with an article which refers to the photograph and is defamatory."  Id. at 399 (quoting 50 Am. Jur. 2d, Libel & Slander § 24 (1970)) (emphasis in original).  CBS fairly states the rule as articulated by the court, but it fails to explain how the rule does not apply here.  CBS presumes that in order to refer to the photograph, the article must explicitly reference it.  Wilhoit suggests that there is no such requirement under South Carolina law.  The Wilhoit court, in the absence of any direct controlling authority, adopted the rule as set forth by the West Virginia Supreme Court in Crump v. Beckley Newspapers, Inc., 320 S.E.2d 70 (W. Va. 1984).  Id. at 400.  The South Carolina Court of Appeal, quoting from Crump, found that "even if the alleged defamatory material refers to another, if the implication is one of identity, the plaintiff may recover."  Id. (quoting Crump, 320 S.E.2d at 80).  The article need not "in any way" state that the plaintiff in the photograph was involved in the conduct described in the article if the plaintiff properly alleges that it could be implied.  Id. (quoting Crump, 320 S.E.2d at 80).  While CBS maintains that "unlike the newscast in Wilhoit, nothing in the Article here refers to the stock police photo," ECF No. 8 at 7, it does not appear that the defendant in Wilhoit did anything more than air the allegedly misleading film of the plaintiff alongside its news story.[1]  Therefore, here, while the article refers to another and does not specifically

---

[1] Grimsley cites two other cases for the proposition that in a defamation action, the plaintiff's name does not need to be mentioned in writing because a description or photograph may provide sufficient bases for bringing claims.  ECF No. 7 at 4 (first citing

reference the photo, Grimsley has sufficiently alleged that the article identifies him as the subject of the accompanying text by publishing his photo alongside that text.

Finally, CBS argues that the case is distinguishable by reiterating that "the officers named for the wrongdoing [we]re, in fact, identified in the Article as other officers." Id. The main flaw with CBS's position is that it was considered and directly rejected in Wilhoit and the cases it adopted. See Wilhoit, 358 S.E.2d at 398–400 (finding no error in allowing the jury to decide whether it was defamatory for footage of the plaintiff to be shown simultaneously with a report on the sentencing of an embezzler who was not the plaintiff); see also id. at 399 (citing Wandt v. Hearst's Chi. Am., 109 N.W. 70, 71 (Wis. 1906)) (describing judgment in favor of a plaintiff whose photograph was mistakenly included in an article accusing a person of being a "suicide fiend" and noting that "even though the name of the person referred to as a 'suicide fiend' was given, the juxtaposition of the plaintiff's photograph with the article was, in effect, a statement that the plaintiff was a 'suicide fiend'"); id. (citing Peck v. Tribune Co., 214 U.S. 185, 188 (1909)) (describing libel action before the Supreme Court where the plaintiff's picture was inserted in an advertisement in the place of a different nurse identified as "Mrs. A. Schuman"). Those cases are not perfect analogs either, as none of those cases presented a scenario where the plaintiff's name was positively identified, in the same manner as Grimsley's was in the photograph. A reasonable jury may thus ultimately conclude that the inclusion of Grimsley's name should have minimized any doubt as to his involvement

---

Nash v. Sharper, 93 S.E.2d 457 (S.C. 1956); and then citing Holmes v. Curtis Publ'g Co., 303 F. Supp. 522 (D.S.C. 1969)). The court finds that such a premise is not controversial, and in any case, Wilhoit is more directly applicable, and the court chooses to focus its analysis thereon.

in the incident described in the Article. At this stage, however, Grimsley has plausibly alleged that the Article and accompanying photograph, when viewed in the light most favorable to him, was "of and concerning him."

### IV. CONCLUSION

For the reasons set forth above, the court **DENIES** the motion to dismiss.

**AND IT IS SO ORDERED.**

                                        **DAVID C. NORTON**
                                        **UNITED STATES DISTRICT JUDGE**

**March 10, 2022**
**Charleston, South Carolina**